And we'll proceed to the fourth case, Pidgeon v. Smith. Mr. Spencer. Good morning, Your Honor. Opposing counsel, may it please the court, we reenter the field of ineffective assistance of counsel raised in a federal habeas corpus petition. As we all know, when a criminal defendant challenges a conviction on the basis of a claim of ineffective assistance of counsel, either counsel who represented him at trial or in, as in this case, the negotiation of a plea disposition, the Supreme Court has made clear that to fairly eliminate what the Supreme Court said is the distorting effects of hindsight. And that a court's obligation is to reconstruct the circumstances of counsel's challenged conduct and to evaluate that conduct from counsel's perspective at the time. In this case, the Wisconsin State Courts had not provided an appropriate opportunity at an evidentiary hearing for the defendant to conduct, to pursue, with evidence that he would be obliged to present his claim of ineffective assistance of counsel in connection with the negotiation of a plea that affected both multiple charges in this particular case and also secured an agreement from a prosecutor in another county not to pursue a charge. When the district court in this case said that an evidentiary hearing should have been held in the state court, and because of the absence of that hearing, the court would require one here to provide an opportunity for the defendant to prove those things that he didn't have an opportunity to prove in the state court, the court said it was making that order because the record in the state court, without an evidentiary hearing, was thin and undeveloped and didn't provide an adequate basis for the state courts to have summarily rejected, without an evidentiary hearing, the defendant's claims. And the court went further, the district court went further, and established the ground rules for how the hearing before it would be conducted. The purpose of that hearing, the court said, was for the defendant to have the opportunity and he would be required at the evidentiary hearing to present all of the evidence he would have been required to present in an attempt to support his claim of ineffectiveness at a hearing in the state court had one been presented. And the court, the district court here, specifically cited to the long-established Wisconsin rule announced in the case of State v. Machner that says when a defendant challenges the effectiveness of counsel at plea or sentencing or trial, the defendant is obliged to notify the attorney whose conduct is being challenged and to produce that attorney at the hearing so that the attorney is given an opportunity to explain his or her challenged actions. That rule is firmly established in Wisconsin. It's known as the Machner rule. And there is Wisconsin precedent establishing the proposition that in most cases, the failure of a defendant to bring in the attorney whose conduct is being challenged and to present that testimony should result in the denial of the claim, of the motion. Was the district court's position on that? Didn't she suggest her order or something that they bring him in? In the court's order directing that there be an evidentiary hearing, the court specifically cited Machner and said at the evidentiary hearing that it was order. The defendant, this was the district court's language, the defendant, Mr. Pidgeon, would be the petitioner, would be required to present all of the evidence he would have been required to present at a state court evidentiary hearing conducted under Machner. There was a specific incorporation of the case of state versus Machner. Frankly, it was surprising at the evidentiary hearing before the district court that Mr. Pidgeon then did not call his attorney, Mr. Fisher, whose conduct was challenged, and Mr. Pidgeon was in fact the sole witness who testified. It should be remembered that when Judge Crabb ordered an evidentiary hearing in this case, she made clear, and this is directly what Machner says, that the defendant would have this opportunity at an evidentiary hearing to present his views and the views of his counsel on the challenged actions. In this case, the alleged mistake, the mistake by the defense counsel about whether a prior conviction would count for, under Wisconsin's enhanced sentencing procedure for repeaters, as a strike offense for which if you get three strikes there's a potential of life imprisonment. But it was clear from Judge Crabb's order that the hearing was for both the defendant and his attorney to testify. The defendant did not call his attorney, and the state of Wisconsin's view in this case is that the district court imposed a requirement that Mr. Pidgeon present the attorney's testimony. Pidgeon failed to comply with that requirement, and the district court erred in failing to enforce it. What was your reason? The district court, without specifically discussing Machner, the very case that it had cited in ordering the evidentiary hearing, proceeded to find, without any discussion of what counsel might have said, in essence, the best I can make out of the court's decision, is that the court determined that it couldn't imagine that there was a reason for the error that had occurred in this case. But it did so without hearing anything from defense counsel about what had happened at the time. The court had, when it ordered the evidentiary hearing, said, we need to hear what kind of investigation, what did counsel do that led to his making the mistake of mistakenly interpreting a prior conviction as one that would count as a prior strike? What kind of investigation did he conduct? What sort of legal analysis did he conduct? What did he discuss with his client? It's to be remembered in this case that the mistake, which the state acknowledged in this case, was made by defense counsel, was a mistake that was apparently shared with the prosecutor who agreed to the plea to the case. And it may very well have been a mistake that was, a conclusion that was mistakenly reached by the trial court, who never interfered in any way with the disposition in this case. But Judge Crabb, frankly, in our view, inexplicably, proceeded to decide the question of both deficient performance and prejudice without enforcing its own rule that defense counsel had been called to testify. Excuse me? It was the Wisconsin rule, not her rule. It was a rule that she adopted in her order. She said follow the rule. She said follow the rule. She said that this hearing will be conducted so that the defendant, excuse me, she said in her order, this hearing will be held and the defendant will be required at this hearing to produce all of the facts, all of the testimony he would have been required to provide at a mock hearing. You're into your rebuttal time, but you can use it any way you want. That's the state's simple point. There was a ground rule set. It's consistent with Strickland and Wisconsin law, but most important, it was a ground rule that was set that would have provided the court with an opportunity to fully decide this case. The defendant didn't comply with it, Mr. Pidgeon, and the court didn't enforce it. And that was an error. That's the state's position. Thank you, Your Honor. Mr. Bidney? May it please the court, the ground rules were set, and the district court has the discretion to decide whether or not to enforce it. As we made clear in the brief, we'd have no qualm if the district court had said, look, you didn't abide by the court's order, you're out of the game. But that's not what the court did. And the reason the court didn't do that was not arbitrary. She didn't say, you know, I really like Mr. Pidgeon, I don't like Mr. Gansner. Instead, she had a very long back and forth with counsel after the hearing, and says, you know, why isn't Fisher here? I want to know whether or not this was a good plea deal. What was going on right there? Is this a good plea deal that he reached, that he got a good benefit? And the counsel at the time said, that's not the analysis, Your Honor. The analysis is not whether or not it was deficient. And there's no question he was deficient. It's not just the single strike that Mr. Gansner brings up. He was wrong on two points of law. Two points of law that raised not the potential of life, but mandatory life. That's enough to make a strong man weak. You go from, hey, I might be able to deal with this trial case, I might want to fight this, to you lose on that, you're going away for life. It's a whole different ball game. The analysis, the discussion, everything is different. And when you learn it, you all of a sudden feel you're guilty. You're innocent, I mean. When you learn it, yeah. Well, he's not just saying it after the fact. No, I'm not in accord with it. But he's given a lot. He's making the speedy trial demand. He's looking to fire his attorney when he's not moving into trial. I assume you agree with your opponent that the only issue in the case is whether or not the trial judge should have enforced that Mocker Rule, which says he's got to call the lawyer. No. I mean, I think you have the independent duty to make sure that he was deficient. But if that's the ground rule that this issue is framed on, yeah, I'll allow that because we win. There's been no case cited. Look, we had to go to the Second Circuit, we went to the Eleventh Circuit, I went to the Fifth Circuit for cases where these standing orders or the local rules, time and time again, the losing party says, whoa, whoa, whoa, hey, that brief was 15,000 words. You guys should have struck it. Why didn't you strike it? Well, that's not a ground to appeal. The ground to appeal would have been, was it wrong on the deficient? Was this objectively wrong? No. All right, was he not credible? Did Mr. Gansner's cross-examination just tear him apart such that he was left without a leg to stand on? No. All right, well then, game over. The analysis is very straightforward at that point. Just because the district court doesn't enforce, whether it be a time limit or a page limit or the form of its hearing, whether or not we're supposed to sit down or stand up, use a microphone, not use a microphone, podium, no podium. Well, that's just slightly different than that. It is in a small respect, but it's all procedure. And it's all procedure that the district court can relax or the district court can enforce. And here, we went at our own peril and we gave good reason for that. And so... What's his exposure here if the case continues to proceed? 25 on the sexual assault of the child, whether or not that would be structured in a half in, half out. But he got hammered. 10 in, 10 out. And you look at that and you say, well, what's going on behind that? Well, if the prosecutor's going to give away a mandatory life, you're going to have to do a bit. And that bit went from 7 to 10. That's a big compromise. Mandatory life hung over this whole thing. And that this court has made clear in Julian and then I think more of E. Bryant. Look, you don't have much duty as a defense attorney. You just got to get the law right, learn the facts, advise your client. That's it. We're not asking for perfection. We're not asking for the Edward Bennett Williams cross-examination. We're not asking for the Jim Schillow closing statement. We're just asking, did you give them what the Constitution demands? And here, Mr. Pidgeon clearly didn't have that. Because from the get-go, the third time he meets his lawyer, his lawyer says, whoa, whoa, buddy. Guess what's on the table if you lose here and then plead over in Columbia? You're going away for mandatory life. The guy weeps. It does make you nervous. It makes you nervous. Nervous enough to put in threats, duress, coercion in the signature line. And then fight every way after as soon as he finds out what the truth is. So, Your Honor, Mr. Pidgeon, are they in trial? Yes. Mr. Ganser, thank you, Mr. Pidgeon. If I may have just a moment, Your Honor. Mr. Ganser, let me just ask you. There's no requirement, is there, in any federal court case, that in holding an evidentiary hearing in a habeas setting, that a district court must follow a state court rule? There is no case that I could cite. Neither Mr. Bugney nor I could present this court with it. I mean, I think that's – we've got to frame that a little bit in the context of the     Right. I mean, I think that's – we've got to frame that a little bit in the context of the And I want to address that. There's no requirement that in conducting a federal evidentiary hearing, as in this case, where the court determines that there should have been a hearing in the state court, and it wasn't, and before the court can decide it, it needs to take evidence. There's no requirement that a federal court has to enforce a state procedural rule. Your beef is that she did enforce her own rule. Excuse me? Your beef is she did enforce the rule that she herself required. That's right. I don't know that there's a constitutional requirement that she have done so, but Judge Crabb selected the rule and then, for reasons that we don't understand, didn't enforce it when it wasn't complied with. The most important part of this is she knew what she was doing when she did it. The point is whether or not that constitutes reversible error. Right. Well, I think the question, frankly, Your Honor, is less whether or not a federal court is obliged to follow a state procedural rule. In this case, I think it's a pretty good state procedural rule, but let's look at the language of Strickland itself that I began my argument with, which is that a court, in assessing attorney performance, should reconstruct the circumstances of counsel's challenged conduct and to evaluate that conduct from counsel's perspective at the time. There may be many ways to do that, but the focus is on what did counsel think? What did counsel see? What did counsel do? And in this case, all we heard from was Mr. Pidgett and a few undisputed record notations from the state circuit court record showing what had happened in the case. I think there was an insufficient inquiry into counsel's perspective at the time about what happened. Just in the abstract, can you think of any good reason not to tell the defendant the condition of the state of the law? No, absolutely. No, absolutely. No, absolutely. I mean, I could imagine a few that would probably make more sense in a made-for-TV novel, but in this respect, I just want to point out to the court, Mr. Bugney has referred to the defendant got hammered here. Let's not lose track of the fact that an extraordinary negotiated plea disposition occurred here. Six counts were reduced to one. Here, he got a heck of a deal. I got to understand that. I understand all of that. And I don't know how that played, how that informed counsel's actions or decision-making or advice to his counsel about how to proceed. He, quite apart from being hammered in this case, he got an extraordinary deal. Thank you, Your Honor. Thank you. The case is taken under advisement.